**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02811-CMA

KATIE L. WAMSLEY,

      Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER REVERSING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS
AND REMANDING TO THE COMMISSIONER**

---

      This matter is before the Court on Plaintiff Katie L. Wamsley's appeal of the Commissioner's August 4, 2008 decision denying her claim for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34 and 1381-83.  Jurisdiction is proper under 42 U.S.C. § 405(g).  For the reasons discussed below, the denial of Social Security disability benefits is reversed and this case is remanded to the Commissioner for further proceedings consistent with this Order.

## I.  BACKGROUND

      Plaintiff Wamsley was born in 1978, and was 27 years old on the alleged disability  date of May 2, 2006.  She has a high school education, has attempted to take college level classes, and has past relevant work as a correctional officer, massage therapist, park ranger, and photographer.  (AR 20, 40).

Plaintiff alleges disability due to reflex sympathetic dystrophy/complex regional pain syndrome of the right upper extremity.  (AR 15; *see also* AR 47-48).

Plaintiff applied for Disability Insurance (Title II) and Supplemental Security Income (Title XVI) benefits on April 20, 2006.  Her claims were initially denied on November 16, 2006.  On January 3, 2007, Plaintiff filed a timely request for a hearing, which was held on April 3, 2008.  (AR 60).

At the hearing, Plaintiff testified as to the nature of her disabilities and her daily activities.  She described the physical affects of her pain syndrome as a "buzzing nerving pain in [her] thumb and [her] first finger sometimes."  Her fingers go numb and pain radiates up her arm and neck and heat radiates from her right hand to her shoulder.  She gets muscle spasms in her hand.  As a result of these symptoms, she tends to drop things a lot.  (AR 28).  On a scale of 1 to 10, with 10 being the most extreme pain, Plaintiff rated her pain as 8 or 9, even with the use of medication. (AR 29).  Her pain is at a 6 if she does not engage in activities such as washing dishes. (AR 30).

To treat her pain, Plaintiff does acupuncture on a monthly basis; she was previously seeking acupuncture treatments twice a month.  (AR 31).

During the day, Plaintiff frequently takes naps; in Plaintiff's words, "it's just easier to lay down than to have to deal with constant pain of trying to keep up with things, daily activities like doing the dishes after you eat or taking a shower."  (AR 33).  Plaintiff, who lives in a townhouse with her mom, tends to stay in her room, takes care of her son with

2

assistance from her mom, shops for groceries but has her six-year old son carry them, and does one or two loads of laundry a day, with help from her mom.  (AR 34-35, 38). Plaintiff tries not to go out much because she gets tired and "end[s] up taking a nap somewhere when [she's] driving[.]" (AR 36).  Plaintiff usually wakes up at 6:30 a.m. to prepare her son's medication to treat ADHD, goes back to bed until 8 a.m., and then wakes her son up to get him ready for school.  Plaintiff is only able to get herself out of bed and ready for the day "when [she] ha[s] an appointment and [she] ha[s] to show up somewhere." (AR 35.)  Plaintiff's pain renders problematic tasks like buttoning clothes and getting dressed.  (*Id.*)  Plaintiff's social activities consist of taking her son to the park and watching him play and going to church.  However, Plaintiff expressed having difficulty with both of these activities.  (AR 37.)

Plaintiff expressed having difficulty with concentration and an ability to read. (AR 39.)  Sometimes, in the middle of a task, she forgets what she is doing.  (*Id.*) Plaintiff has had only limited success with taking on-line classes, having only passed one class, failed another class, and had to drop another class because of stress and an inability to complete the work.  (AR 40.)  Plaintiff also stated that she attempted to obtain vocational rehabilitation, but she was turned down because of all the pain she experiences.  (AR 40-41.)

Noran Dunn, a vocational expert (VE), also testified at the hearing.  She opined on two hypothetical questions posed by the ALJ.  (AR 43-45.)  The ALJ first posed the following hypothetical:

> Let's assume an individual same age and educational background as the claimant, limited to an exertional level for lifting and carrying in the full range of sedentary with additional limitations of no over chest level work, no push/pull maneuvers in excess of 30 pounds, no keyboarding and no ultra fine dexterity with the fingers such as working with very small items and to kind of give you a point of reference, nothing smaller than a normal small paperclip.

(AR 44.)   The VE concluded that such an individual would be precluded from Plaintiff's past relevant work, but that such an individual would be able to work as a surveillance system monitor, a sedentary job that has a Colorado occurrence of about 365 and a national occurrence of about 11,400.  (*Id.*)

The ALJ then posed the following second hypothetical:

> Assume the restrictions in the first hypothetical, plus add an additional limitation of an ability to sustain on task activity for only an hour to an hour and a half at a time and then needing an unpredictable length of break.

(AR 44-45.)  The VE concluded that an individual with this limitation would not be compatible with any type of job.  (AR 45.)

On August 4, 2008, the ALJ issued a decision, finding that Plaintiff was not disabled.  (AR 12-22.)  The ALJ determined that:

(1)   At Step 1, Plaintiff has not engaged in substantial gainful activity since May 2, 2006, the alleged onset date;

(2)   At Step 2, Plaintiff has the following severe impairments: reflex sympathetic dystrophy/complex regional pain syndrome of the right upper extremity;

(3)     At Step 3, Plaintiff does not have an impairment or combination of
impairments that meets or medically equals one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1;

(4)     Plaintiff has the residual functioning capacity (RFC) to lift and carry within
the range of "sedentary" exertional work, with the following limitations:
no pushing or pulling in excess of 30 pounds with the upper extremities,
no work above chest level, no work involving keyboarding or ultra fine
dexterity, such as working with very small items (*i.e.*, items smaller than
a normal-sized paper clip);

(5)     Reason exists within the record to suspect exaggeration of Plaintiff's
subjective complaints;

(6)     At Step 4, Plaintiff is unable to perform any past relevant work; and

(7)     At Step 5, Plaintiff has **not** been under a disability, as defined under the
Social Security Act, from her disability onset date of May 2, 2006, through
the date of the decision.

(AR 12-22.)

On August 4, 2008, Plaintiff filed a request with the Appeals Council for review,
which the Council denied on October 20, 2009.  (AR 1-4.)  On December 2, 2009,
Plaintiff filed a complaint, seeking judicial review of the denial of Social Security
benefits.  (Doc. # 3.)  The Social Security Administrative Record was filed with the Court
on March 2, 2010.  (Doc. # 9.)  On May 14, 2010, Plaintiff filed her Opening Brief.  (Doc.

# 13.)  Defendant, the Commissioner of Social Security, responded on June 21, 2010, and Plaintiff replied on July 6, 2010.  (Doc. ## 14, 15.)  On January 20, 2011, oral argument was presented before this Court, and the Court took the matter under advisement. (Doc. # 27.)

In this appeal, Plaintiff contends that the ALJ erred in the following three ways: (1) he did not properly consider the effect of Plaintiff's mental impairments on her ability to work; (2) he did not properly assess Plaintiff's ability to perform other work; and (3) he failed to consider the opinion of Michael Fitzgibbons, a vocational expert hired by Plaintiff.  (Doc. # 13 at 4.)  Plaintiff's objections can be summarized as follows: the ALJ failed to adhere to the regulations' clearly stated procedures for assessing disability claims by taking shortcuts in the explanation of his reasoning and review of the record and, thus, the ALJ's decision improperly forces this Court to re-weigh the evidence or substitute its judgment for that of the ALJ.

## II.  <u>STANDARD OF REVIEW</u>

## A.    STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than

a preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

The Court does not re-weigh the evidence or substitute its judgment for that of the

Commissioner.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "Decisions

in which substantial evidence was disregarded or which are based on the culling of

isolated bits of evidence from the record to support a preconceived conclusion will not

satisfy the substantial evidence test."  *Himmelreich v. Barnhart*, 299 F. Supp. 2d 1164,

1167 (D. Colo. 2004).

## B.    EVALUATION OF DISABILITY

The qualifications for disability insurance benefits under the Social Security Act

are that the claimant meets the insured status requirements, is less than sixty-five years

of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Social Security Act defines a disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last

for a *continuous* period of not less than *twelve* months."  42 U.S.C. § 1382c(a)(3)(A)

(2006) (emphasis added). "[A] medical finding of disability is not based solely on

objective test results.  It includes an evaluation of the patient's medical history and the

physician's observations of the patient, and necessarily involves an evaluation of the

credibility of the patient's subjective complaints of pain.  A medical opinion based on

all of these factors is medical evidence supporting a claim of disabling pain, even if the

objective test results, taken alone, do not fully substantiate the claim." *Nieto v. Heckler*,

750 F.2d 59, 61-62 (10th Cir. 1984).

## III.  ANALYSIS

**A.  WHETHER THE ALJ FAILED TO CONSIDER PROPERLY PLAINTIFF'S MENTAL IMPAIRMENTS IN HIS ASSESSMENT OF THE RFC AND THE IMPAIRMENTS' SEVERITY, CONSIDERATION OF TREATING SOURCE OPINIONS, AND EVALUATION OF THE RECORDS**

Plaintiff argues that, in failing to consider properly the effect of Plaintiff's mental

impairments, Defendant committed the following six errors: (1) the ALJ determined that

Plaintiff's mental impairments are not "severe;" (2) the ALJ ignored the opinions of

Plaintiff's treating psychologist; (3) the ALJ mischaracterized the evidence regarding

Plaintiff's mental impairments; (4) the Social Security Administration failed to have

Plaintiff's claim evaluated by a psychological consultant; (5) the ALJ failed to evaluate

Plaintiff's mental impairments and resulting functional limitations; and (6) the ALJ failed

to consider and discuss whether Plaintiff satisfied the requirements of any listed

impairment.  (Doc. # 13 at 1.)  For the following reasons, the Court finds that the ALJ

failed to consider properly Plaintiff's mental impairments, despite the fact that in the

August 4, 2008 Decision, the ALJ gave Plaintiff "significant benefit of the doubt," when

he assessed work-related functional restrictions at a highly restrictive sedentary

exertional level.

At the outset, the Court notes that the parties appear to conflate Plaintiff's two

different kinds of mental impairments, namely the impairments arising from anxiety

and depression that may affect her work-related mental functioning and Plaintiff's

8

impairments that may affect her sensation of pain.  In the August 4, 2008 Decision, the ALJ separately addressed both, but not in any significant detail.

In the first instance, the ALJ acknowledged an "indication for a history of anxiety and depression in the record," but concluded that Plaintiff had only "mild functional deficits," as evidenced by a GAF score of 60 assessed by Dr. Rebecca S. Hawkins, which was not accompanied by any specific limitations on Plaintiff's work-related mental functioning,[1] Plaintiff's failure to obtain any specialized mental health treatment, and the absence of evidence in the record that would support a "severe" mental impairment (AR 16).

In the second instance, the ALJ acknowledged that Plaintiff "was diagnosed with pain disorder, associated with both psychological factors and a general condition, based on a psychological evaluation conducted in August 2007." (*Id.*)   However, the ALJ considered all symptoms and the extent to which these symptoms could reasonably by accepted as consistent with the objective medical evidence.  Ultimately, the ALJ concluded that Plaintiff's "medically determinable impairment could reasonably be expected to produce the symptoms alleged," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent she alleges[.]" (AR 17).  Nevertheless, the ALJ gave Plaintiff the benefit of the doubt and assessed a low RFC, namely "sedentary" exertional work, limited to no

---

[1]   Work-related mental functions include understanding instructions, using judgment to make work-related decisions, and interacting appropriately with the public or co-workers. S.S.R. 96-8p, at *6 (Cum. Ed. 1996).

pushing or pulling in excess of 30 pounds with the upper extremities, no work performed

above the chest level, and no work involving keyboarding or ultra fine dexterity, such as

working with very small items (*i.e.*, items smaller than a normal-sized small paper clip).

    1.    <u>Plaintiff's Mental Impairments of Anxiety and Depression</u>

With respect to the ALJ's determination that Plaintiff's anxiety and depression are

not severe, Plaintiff contends that the ALJ summarily reached this conclusion, failed to

include any mental limitations in the RFC determination at Step Four, and failed to

consider whether Plaintiff's mental problems would affect her ability to perform other

work at Step Five.  (Doc. #13 at 11).[2]

    *a.*    *Assessment of the Impairments' Severity and Determination of the*
        *RFC and the ALJ's Characterization of Evidence*

When evaluating mental impairments, the Commissioner must follow the "special

technique" set forth in 20 C.F.R §§ 404.1520a(a), 416.920a(a).  When employing the

"special technique" at Steps 2 and 3, the ALJ "must first evaluate [the claimant's]

pertinent symptoms, signs, and laboratory findings to determine whether [she has] a

medically determinable mental impairment[ ]" and, if he so finds, "specify the symptoms,

signs, and laboratory findings that substantiate the presence of the impairment[.]"

20 C.F.R. § 404.1520a(b)(1).

If the ALJ finds a medically determinable impairment, he is then required to rate

the degree of a claimant's functional limitations caused by those limitations in the areas

---

    [2]  All page number citations refer to the numbering used by the court's CM/ECF
docketing system and not to the document's original numbering.

of activities of daily living; social functioning; concentration; persistence, or pace;

and episodes of decompensation.  20 C.F.R. § 404.1520a(c); *Stokes v. Astrue*, 274

F. App'x 675 (10th Cir. 2008).  The ALJ's written decision must incorporate his pertinent

findings and conclusions.  20 C.F.R. § 404.1520a(e)(3).

      Further, the consideration of the amount of treatment a claimant receives is to

play no role in the ALJ's determination of an impairment's severity.  "This is because the

lack of treatment for an impairment does not necessarily mean that the impairment does

not exist or impose functional limitations.  Further, attempting to require treatment as a

precondition for disability would clearly undermine the use of consultative

examinations."  *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010)

(unpublished); *see also Fleetwood v. Barnhart*, 211 F. App'x 736 (10th Cir. 2007)

(unpublished) (stating, "we have found no case authority requiring [a claimant] to obtain

medical treatment from [a mental health] specialist before an ALJ can find that she has

a severe mental impairment," and finding error where record contained evidence that

the claimant's physician was treating her mental health issues); *Broderson v. Astrue*,

No. CIV-06-1233-L, 2007 U.S. Dist. LEXIS 99091, at *12-*13 (W.D. Okla. Sept. 5, 2007)

(unpublished) (noting error where ALJ relied on the claimant's failure to see a mental

health specialist, despite evidence that the claimant received anxiety and depression

medications from physicians), *recommendation adopted by* 2007 U.S. Dist. LEXIS

99147 (W.D. Okla. Oct. 12, 2007) (unpublished).

In the instant case, the ALJ entirely failed to employ this technique, or, at the very least, failed to incorporate his pertinent findings and conclusions in the August 4, 2008 Decision, when he summarily concluded that Plaintiff's anxiety and depression were not severe.  Additionally, without any explanation, the ALJ determined that an assessed GAF score of 60 was "suggestive of only mild functional deficits."  (AR 16).  However, as noted by Plaintiff, a GAF score of 60 signifies, "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning,"[3] by concluding that the score was indicative of only "mild functional deficits."  (Doc. # 13 at 14-15.)  In response, Defendant asserts that the ALJ reached this conclusion based on Dr. Hawkins' own observations of Plaintiff.  However, this is a *post hoc* explanation and, once again, the ALJ's lack of explanation impermissibly demands this Court to substitute its own judgment for that of the ALJ.  Moreover, the ALJ's lack of explanation renders impossible a meaningful review of the ALJ's reasoning.  *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Additionally, the ALJ failed to rate the degree to which Plaintiff's anxiety and depression affect her activities of daily living, social functioning, concentration, persistence, or pace, and cause any episodes of decompensation.  Thus, without any explanation, the ALJ chose not to account for Plaintiff's anxiety and depression when he determined Plaintiff's RFC.  The ALJ's lack of explanation places this Court in the

---

[3]  Doc. # 13 at 14 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV") at 32 (4th ed. 1994)).

unwelcome position of having to surmise as to the ALJ's reasoning and re-weigh the

evidence.  As a result, this Court is unable to review adequately the ALJ's assessment.

> b.     Evaluation of Treating Source Opinions

The regulations also set forth specific procedures for evaluating the opinions of

a treating physician or other treating source.  The opinion of a treating physician is

generally given controlling weight.  However, an ALJ can disregard that opinion, but only

if it is contradicted by other medical evidence or otherwise inconsistent with substantial

evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757 (10th Cir. 2009)

(unpublished); 20 C.F.R. § 404.1527(d)(2).  The analysis of how much weight to accord

a treating source opinion is sequential.

> An ALJ must first consider whether the opinion is "well-supported by
> medically acceptable clinical and laboratory diagnostic techniques. If the
> answer to this question is "no," then the inquiry at this stage is complete.
> If the ALJ finds that the opinion is well-supported, he must then confirm
> that the opinion is consistent with other substantial evidence in the record.
> In other words, if the opinion is deficient in either of these respects, then it
> is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *see also* 20 C.F.R.

§ 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight we will give

that opinion. The better an explanation a source provides for an opinion, the more

weight we will give that opinion.")

If a treating physician's opinion is not given controlling weight, the ALJ must "give

good reasons" and consider a list of regulatory factors. *Watkins*, 350 F.3d at 1301

(reversing denial of benefits where the ALJ failed to articulate the weight, if any, he gave the treating source's opinion, and the reasons for assigning that weight or for rejecting the opinion); *see also* 20 C.F.R. § 404.1527(d)(2).[4] Though the ALJ must consider all these factors, he need not discuss all of them.  *See Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The ALJ's decision must be specific enough to make clear to subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Watkins*, 350 F.3d at 1300-01; *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In the instant case, the ALJ solely relied upon a GAF score that was assessed by Dr. Rebecca S. Hawkins, a licensed clinical psychologist, who saw Plaintiff on only three occasions to conduct and give feedback on a psychological pain evaluation, upon the referral of Plaintiff's treating physician, Dr. David Reinhard.  (AR 706-723.)  During the evaluation, Dr. Hawkins assessed a GAF score of 60.  However, the ALJ failed to discuss, let alone acknowledge, GAF scores assessed by Plaintiff's cognitive behavioral therapist, Dr. Edwin Shockney, who appears to have seen Plaintiff for a period of seven months and, thus, has a "longitudinal picture of [the claimant's] impairment[.]"[5]  (AR 437-

---

[4]   These regulatory factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)(I), (d)(2)(ii), (d)(3)-(d)(6).

[5]   20 C.F.R. § 416.927(d)(2)(i), (ii).

474.)  On February 3, 2006 and again on May 12, 2006 – 10 days after Plaintiff's

alleged disability onset date – Dr. Shockney noted that Plaintiff had a GAF score of 45-

50.[6]  (AR 462, 472.)  In his February 3 evaluation notes, Dr. Shockney commented that

Plaintiff meets the criteria of an adjustment disorder with mixed emotional features.

(AR 472.)

While GAF scores may not be formal medical opinions, they are a mental health

professional's general assessment of an individual's mental functioning and they are

helpful to an ALJ's assessment of a mental RFC.  *See*, *e.g.*, *Simien v. Astrue*, No. 06-

5153, 2007 WL 1847205, at *2 (10th Cir. June 28, 2007) (unpublished) (finding that the

ALJ erred in ignoring the claimant's GAF scores); *Eden v. Barnhart*, 109 F. App'x 311,

314 (10th Cir. 2004) (unpublished); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496,

503 n.7 (6th Cir. 2006) (unpublished) (noting that while a GAF score is not raw medical

data, it is a mental health professional's general assessment of an individual's mental

functioning and, while no authority requires reliance on a GAF score, it is helpful to an

ALJ's assessment of a mental RFC); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235,

241 (6th Cir. 2002) (noting that a GAF score may be of considerable help in the RFC

assessment and failure to consider it, standing alone, does not render an RFC

inaccurate).  Tellingly, at the January 18, 2011 Hearing before this Court, the

Commissioner's attorney conceded that the ALJ's decision was not perfect and that

---

[6]   A GAF score of 45-50 signifies "serious symptoms . . . or serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).  (Plaintiff's Opening Brief, Doc. # 13 at 6-7) (citing DSM-IV).

the ALJ should have discussed the GAF scores.  (Rough Transcript of 1/18/11 Hearing at 13:45:00-13:45:10).

Additionally, while an ALJ is not required to discuss every piece of evidence, he "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  Further, "[w]hen an ALJ decides to disregard a medical report by a claimant's physician, he must set forth 'specific, legitimate reasons' for his decision."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (concluding that ALJ committed legal errors by, in part, failing to set forth specific, legitimate reasons for disregarding a treating physician's medical report and failing to discuss the pertinent regulatory factors).  In the instant case, the ALJ inexplicably and wholly relied upon a GAF score assessed by Dr. Hawkins and ignored GAF scores twice-assessed by Dr. Shockney.

The Court finds that the ALJ's failure to discuss the GAF score twice-assessed by Dr. Shockney and the weight accorded to such score amounts to reversible error. The ALJ's failure to discuss the accorded weight forces this Court to re-weigh the evidence and surmise why the ALJ disregarded this evidence.  While one could theoretically presume that the ALJ rejected Dr. Shockney's GAF score because it was unsupported by other evidence in the record or was not as detailed as the report issued by Dr. Hawkins, this is not a presumption this reviewing Court is allowed to make.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("We cannot simply presume

the ALJ applied the correct legal standards in considering the [treating source's]

opinion.") The ALJ must "discuss [   ] the evidence supporting his decision, . . . the

uncontroverted evidence he chooses not to rely upon, [and] significantly probative

evidence he rejects[.]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The Commissioner concedes that the ALJ did not adhere to the aforementioned

procedures, but asserts that such error is harmless.  (Doc. # 14 at 23.)  The Court

disagrees.  First, as *Watkins* and its progeny make clear, the ALJ's failure to discuss

any of the regulatory factors in connection with Dr. Shockney's medical assessment

is reversible error.  *See Alejandro v. Astrue*, No. 04-4169, 2007 WL 1894285, at *5

(D. Kan. May 25, 2007) (unpublished) (stating that ALJ's failure to explain why a

doctor's opinion should be accepted and applied constituted reversible error); *Neal*

*v. Comm'r of Soc. Sec.*, No. 08-cv-00512, 2009 U.S. Dist. LEXIS 86470, at *31-*37

(unpublished) (S.D. Ohio Sept. 2, 2009), *adopted by and remanded by* 2009 WL

3010848 (S.D. Ohio Sept. 21, 2009) (unpublished) (remanding for similar reasons).

Second, the prejudice to Plaintiff arises from this Court's inability to review the ALJ's

determination.  *See Alejandro*, 2007 U.S. Dist. LEXIS 48060, at *15.  Third, the Court

cannot "confidently say that no reasonable factfinder, following the correct analysis,

could have resolved the factual matter in any other way."  *Allen v. Barnhart*, 357 F.3d

1140, 1145 (10th Cir. 2004).

    2.    <u>Plaintiff's Mental Impairment – Psychological-Based Pain Disorder</u>

As noted above, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her pain are not credible to the extent she alleges she is unable to work.  (AR 17.)  However, while both parties concede that the record contains evidence that Plaintiff may have a psychological impairment,[7] namely a somatoform disorder, which causes her increased sensations of pain, the ALJ entirely failed to acknowledge or discuss such evidence.  Accordingly, as with Plaintiff's anxiety and depression, the ALJ failed to apply the regulations' "special techniques" for evaluating mental impairments; he failed to evaluate Plaintiff's pertinent symptoms, signs, and laboratory findings to determine whether such a somatoform disorder exists and its severity.   Additionally, the record is bereft of documentation that the ALJ had evidence of Plaintiff's potential somatoform disorder evaluated by a psychological consultant and, thus, the ALJ also erred in this respect.

    a.    *Agency Evaluation of Mental Impairments by Qualified Mental Health Professional*

Pursuant to the regulations, "[a]n initial determination . . . in any case where there is evidence which indicates the existence of impairment[ ] will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.  If the services of qualified psychiatrists or

---

    [7]  *See* Plaintiff's Opening Brief, Doc. #13 at 18 (collecting record citations).

psychologists cannot be obtained because of impediments at the State level, the Commissioner may contract directly for the services."  20 C.F.R. § 404.1503(e) (internal citation omitted).

Defendant asserts that the regulations give the ALJ discretion to determine whether the services of an expert are needed when evaluating a claimant's mental impairment.  (Doc. # 14 at 24) (citing *Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988).)  However, *Bernal* is distinguishable from the instant case.  In *Bernal*, the record contained no evidence seriously challenging the ALJ's own evaluation of and conclusions concerning the claimant's mental impairment, whereas, in the instant case, the record contains some evidence that Plaintiff's pain sensations may have a psychological component.  Thus, the Court finds Defendant's assertion unavailing. Further, the Tenth Circuit has found error where the ALJ drew conclusions about the claimant's mental limitations, without making reasonable efforts to obtain a qualified health professional's review, as in the instant case.  *See*, *e.g.*, *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1048-49 (10th Cir. 1993); *Hill v. Sullivan*, 924 F.2d 972,  974-75 (10th Cir. 1991) (remanding the case and stating, "[s]ince the record contained evidence of a mental impairment that allegedly prevented claimant from working, the Secretary was required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly) (citing 20 C.F.R. § 404.1520a)).

In the instant case, the record reflects that the State Agency conducted its Initial

Disability Determination on November 9, 2005.  (AR 47-48.)  However, the record also

reflects that Plaintiff did not obtain a psychological evaluation of her pain disorder until

August 15, 2007.  (AR 717-723, evaluation by Dr. Hawkins.)[8]  Therefore, the Agency did

not have the prior opportunity to review medical evidence in connection with Plaintiff's

psychological-based pain disorder.  Consequently, pursuant to the regulations,

Defendant had a duty to make every reasonable effort to ensure that a qualified

psychiatrist or psychologist has completed the medical portion of the case review and

any applicable RFC assessment, or contract directly for such services.  *Cf. Johnson v.*

*Astrue*, No.H-07-2544, 2009 WL 6767071, at *7-*8 (S.D.Tex. March 31, 2009)

(unpublished) (finding that the regulation's record-review requirements were met when

doctors reviewed records of the claimant's mental impairment at the state agency's

initial determination and the disability determination form was signed by a state agency

physician).  Because the evidence concerning Plaintiff's psychological-based pain

disorder was not properly reviewed, the ALJ did not even consider whether the disorder

_____

[8]   During that evaluation conducted by Dr. Hawkins, Plaintiff reported being unable to perform such daily activities such as chopping food and styling her hair, reported decreased strength in her right upper extremity, due to her sensations of pain, and reported pain in all 10 of 10 bodily areas and levels of pain that exceeded 96% of chronic pain patients, including burning and stabbing pain and pain like "lightening bolts."  While tests suggested that Plaintiff may be exaggerating her symptoms, Dr. Hawkins opined that Plaintiff's "somatic symptoms are very possibly associated with psychophysiological origins," Plaintiff may be unconsciously exaggerating her symptoms, and psychological factors are not only contributing to her pain "but also to her report of functional disability."  Dr. Hawkins recommended various forms of treatment, including cognitive-behavioral therapy, psychotherapy, and biofeedback techniques. (AR 710, 716, 717, 718, 720, 722).

satisfies the requirements of any mental impairment listed under the regulations, as required at Step Three.

Accordingly, based on the foregoing, the Court finds that remand is warranted to the Commissioner for a reasonable effort to be made to ensure that a qualified mental health professional reviews the records related to Plaintiff's psychological-based pain disorder and for a determination as to whether Plaintiff's psychological-based pain disorder qualifies as a listed impairment under the regulations.

**B.  WHETHER THE ALJ FAILED TO PROPERLY ASSESS PLAINTIFF'S ABILITY TO PERFORM OTHER WORK**

At the April 3, 2008 Hearing, the VE identified Surveillance-System Monitor (DOT # 379.367-010) as a job compatible with Plaintiff's assessed limitations.  The VE testified that 365 such jobs exist in Colorado and 11,400 exist in the United States.

Plaintiff contends that the ALJ failed to determine whether the identified job was available in "significant numbers" as required under the Act, in two respects.  (Doc. # 13 at 19.)  First, Plaintiff contends that the identified job does not actually exist in significant numbers because the Surveillance-System Monitor accounts for "less than eight one-thousandths of one percent of jobs in the national economy, and less than fifteen one-thousandths of one percent of jobs in the regional economy."  (Doc. # 13 at 21.)  However, Plaintiff cites to no cases in this district in which courts have applied the ratio analysis and the Court is aware of none.  Further, as noted by the Ninth Circuit, the regulation's plain language does not contemplate a ratio analysis.  *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).  Accordingly, the Court finds no reason to conclude

that the identified job exists in insignificant numbers.  Second, Plaintiff contends that the ALJ failed to consider whether Plaintiff could actually transport herself to the identified jobs.  However, the Court finds no error.

The Tenth Circuit has identified the following non-exhaustive list of factors that a reviewing court should consider when determining whether work exists in significant numbers: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work.  *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  "The decision should ultimately be left to the ALJ's common sense" in weighing the statutory language and applying the facts.  *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (10th Cir. 1988)).  Further, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Trimiar*, 966 F.2d at 1330.

In light of this precedent and putting aside the aforementioned errors in the ALJ's analysis, the Court finds no error in the ALJ's determination that a significant number of jobs exist in the national economy.  To the extent that Plaintiff questions her ability to drive to the identified jobs or take public transportation, the record contains no evidence that Plaintiff has had any problems transporting herself to medical appointments or to run errands.  Further, "[a] person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience.  Disability insurance is not available to fund his

decision to live far from available jobs." *Lopez Diaz v. Sec'y of Health Educ. and Welfare*, 585 F.2d 1137, 1140 (1st Cir. 1978) ((quoted in *Guidry v. Astrue*, No. 08-cv-01846, 2009 WL 4884282, at *6 (D. Colo. Dec. 10, 2009) (unpublished)).  Further, it is the "unusual case" in which a claimant will be able to show that she cannot use some normal means of transportation, public or private, to transport herself to work.  *Lopez Diaz*, 585 F.2d 1137, 1142.  The instant matter does not appear to be such an unusual case.

**C.   WHETHER THE ALJ ERRED IN FAILING TO CONSIDER THE OPINION OF MICHAEL FITZGIBBONS, A VOCATIONAL EXPERT HIRED BY PLAINTIFF**

Finally, Plaintiff argues that the ALJ committed clear error when he ignored a vocational assessment conducted by Michael Fitzgibbons, a vocational expert Plaintiff hired.  (Doc. # 13 at 22-23.)

Defendant asserts that the opinion of Mr. Fitzgibbons had no bearing on the ALJ's decision because such opinion was based on limitations not identified as credible by the ALJ and, thus, the ALJ's failure to discuss Mr. Fitzgibbons' opinion was harmless error.  (Doc. # 14 at 30.)

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citation omitted).

In the instant case, the Court finds that Mr. Fitzgibbons' conclusions are not uncontroverted, rather, they appear contradictory.  On one hand, Mr. Fitzgibbons opines that Plaintiff "would be unlikely to sustain and maintain employment, even in an occupation with sedentary physical demands."  (AR 150.)  Yet, on the other hand, Mr. Fitzgibbons opines that professional vocational rehabilitation may help Plaintiff successfully return to work.  (AR 151.)  Accordingly, because Mr. Fitzgibbons' opinion was neither significantly probative nor uncontroverted, the Court finds no error in the ALJ's failure to discuss his opinion.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED THAT:

(1)     The ALJ's August 4, 2008 denial of Social Security Disability Benefits and Supplemental Security Income is REVERSED;

(2)     This case is remanded to the Commissioner for further proceedings consistent with this order and judgment, specifically:

(a)     the regulations' "special technique" shall be used to evaluate Plaintiff's mental impairments and the decision shall incorporate pertinent findings and conclusions;

(b)     the decision shall discuss the weight accorded to Plaintiff's treating physician opinions, including assessed GAF scores, and reasons for the accorded weight;

(c)     the Commissioner shall make a reasonable effort to ensure that a

qualified mental health professional reviews the records related to

Plaintiff's psychological-based pain disorder; and

(d)     a determination shall be made as to whether Plaintiff's

psychological-based pain disorder qualifies as a listed impairment

under the regulations; and

(3)     This case is DISMISSED WITHOUT PREJUDICE.

DATED:  January __31__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge